# LEONCIA ORTIZ

*v.*

# BULL INSULAR LINE.

San Juan, Law, No. 1122.

GOOD FATHER OF A FAMILY.

Good Father of a Family—Independent Contractor.

> 1. Quære, whether the defense of the diligence of a good father of a family under Civil Code, § 1804, applies to the selection of an independent contractor.

Good Father of a Family—Pleading.

> 2. If the defense of a good father of a family is not sufficiently set out in the answer, the defect cannot be taken advantage of on a motion for a new trial.

Good Father—Roman Law.

> 3. The principle of a good father of a family goes back to the Twelve Tables as modified by Christianity, and in this form contained in the Theodosian and Justinian Codes.

Good Father—Visigothic Code.

> 4. The subject of negligence was not contained in the Visigothic Law.

Good Father—Partidas.

> 5. The Partidas mark a return to the principles of Roman law, and the general features of patria potestas were enforced.

Good Father—Code Napoleon.

> 6. The liability of the master seems to be taken by the modern Spanish Code from the Code Napoleon, which borrowed it from the Coutume de Paris.

NOTE.—For authorities passing on the question as to who is an independent contractor, see notes in 65 L.R.A. 445, and 17 L.R.A. (N.S.) 371.

Ortiz v. Bull Insular Line.

Independent Contractor—Vice Principal.
>    7. The principles of independent contractor **and of·vice** principal
>    apply under the Porto Rico Civil Code; since they mean in the one
>    case that the defendant did not commit the act and in the other
>    that the principal is liable for the course of business.

Opinion filed March 23, 1918.

*Mr. H. R. Francis* for plaintiff.

*Mr. F. H. Dexter* for defendant.

HAMILTON, Judge, delivered the following opinion:

This case comes up upon a motion for a new trial, and the grounds set out refer especially to a passage in the charge of the court in regard to a good father of a family.

1. The defendant argues that the question of good father of a family under § 1804 of the Civil Code should not enter into the case, because it is an affirmative defense, and was not sufficiently pleaded in the answer. The answer avers that "the boss stevedore or contractor of stevedores was a competent person, having great skill and long experience, and that defendant exercised the diligence and care of a good father of a family in placing this, the said boss stevedore or contractor, in charge of the work." It was held by this court upon previous trial that while the statutory expression, "diligence of a good father of a family," is not clear, it means at least that the employer shall exercise care in the selection of the employee and in supervision of the employee when he is in the service. This is also the view of the Commentator Manresa, 12 Comentarios,

622. The charge of the court in this regard went upon the alternative that if Hernandez, the man in question, was an independent contractor, the question of good father of a family did not arise; while, on the other hand, if he was a mere employee of the company, the principle of good father of a family would enter the case. This was perhaps not broad enough. It may be that the rule under § 1804 would apply also to an independent contractor, for he also is employed by the defendant. If not applying this rule to an independent contractor was an error by the court, it was one in favor of the plaintiff; for he contends this defense should not be in the case at all, and limiting it to half the case is as to plaintiff, if error at all, error without injury. If the answer is ambiguous in that it might refer either to an independent contractor or might be a mere descriptio personæ of a higher employee, the time to have the pleadings made more definite was earlier in the case than a motion for a new trial.

2. It is also argued that the answer does not follow the statute and allege that defendant "employed all the diligence of a good father of a family to avoid the damage." The objection comes too late, as the answer sets up that the defendant exercised the diligence and care of a good father of a family in placing said Hernandez in charge of the work. Under common-law pleadings if a plea of anything is proved it defeats the case. The Porto Rico Code of Civil Procedure is based on common law, although it may well be that many technical features of common-law pleading are eliminated. It seems plain that in the case at bar the defense of good father of a family was intended to be set up by the answer. If it was not sufficiently set out, the defect should have been pointed out

X. Porto Rico.—22.

earlier.   A new trial was granted for the express purpose
of permitting amendment of the pleadings so as to bring in this
question of good father of a family.   Moreover the charge
covered the point of supervision being necessary as well as
careful appointment, and so the plaintiff had the same benefit
as if the answer had been fuller.

3. The point, therefore, being in the pleadings and properly
discussed in the charge, the question arises whether it is a good
defense under the evidence shown on the trial.   The general
subject of obligations which arise from fault or negligence is
derived by the Civil Code from the Partidas and comes in
principle from the Justinian Digest, bk. 39, title 2, and Insti-
tuciones, bk. 4, title 5.   It is true that the Digest and Code
of Justinian were never in force in Spain.   Their principles
were brought into the Spanish law in consequence of the uni-
versity movement following the discovery of the Pandects at
Amalfi in 1151.   The real origin of Roman law in Spain is to
be found in the earlier Theodosian Code.   There were differ-
ences between the two compilations, but both go back to the
same source and in the particular of patria potestas there was
no essential variation.   The primeval ownership of his family
by the pater familias, although continued in the Twelve Tables,
had been modified by the pretor long before even the Theodo-
sian Code.   The son had been particularly emancipated as to
his earnings and political rights.   The responsibility for a tort,
therefore, has a long history growing out of the original family
relation, going back even of the Twelve Tables.   As the family
was a unit, a corporation so to speak, its representative, the
father, was responsible in all respects for the contracts and
delicts of its members.   The Lex Aquilia gave a man damages

Ortiz v. Bull Insular Line.

for the killing of his slave, the pretor by an actio utilis extended this so as to create an accountability for acts not strictly delicts, and the imperial legislation found in the Theodosian and Justinian Codes extended this to negligence. Under the Romans there were no manufactures or factories in the modern sense of the word, and the question of responsibility pro and con did not outgrow in principle what it had been in the family relation, except that commercial usages brought about the liability of shipowners and innkeepers for delicts of their servants within the scope of their authority, and the pater familias was liable for delicts of his unemancipated son. Sohm, Inst. Roman Law, § 86. In time Christianity introduced the modification that a father should exercise his powers in a kind manner, and this was embodied in both the Theodosian and Justinian Codes.[1] In the principle this was what the modern Spanish law calls a good father of a family. The father's general responsibility for the son living with him remained.

4. What is called the Visigothic Code, A. D. 625, known to the Spaniards as the Fuero Juzgo, is claimed to be the beginning of Spanish law as such. It retains much of the power of the father, but there is nothing special upon the matter of responsibility for acts of members of the family. There was not then such a subject as employer and employee, for labor was slave labor as under the Romans, and the subject is embraced under that of master and servant. As to the responsibility of the master for the act of a slave there is nothing except book 8, title I. Law 1, a Law of Resesvintus, that whenever anyone commits an unlawful act by order of his patron or master, the patron or master is liable, and not the person committing the act, "because it is evident that he did not

---

[1] Digest, Lib. VII. title I., 9, § 2; VII. title VIII. 15, § 1; XI. 4, 22.

Ortiz v. Bull Insular Line.

'commit the act by his own will, but under the command of the one possessing power over him." Scott, Visigothic Code, 264. The subject of negligence can only arise in a more settled state of society than there was under the Visigoths; and the results of negligence, whether by the person himself or by the one under him, therefore finds no place. The Visigothic Code directly prohibits the use of Roman or any other law, and negligence therefore is a later development, and what there is on the subject came in by what is called the "penetration" of the Justinian law.

5. The Partidas began or accentuated the scholastic tendency for a return to the principles of the Roman law, what is called the "penetration" of the Justinian legislation; but those times of the Christian reconquest from the Moors were rude, and offered little opportunity for legal development. The Partidas, which begins Spanish legislation as to torts, is confined to acts of servants and animals (part vii, title xv, Laws 5, 6, 21–6); and to liability arising from buildings (part iii. title xxxii. Laws 10, 11). The general principle of patria potestas was retained, but negligence was too refined a legal principle to receive attention. Nevertheless it was to be developed under the influence of the Civil Law, from this time actually studied.

6. As expressed in the Spanish Code, the general liability of the master seems to be taken from the Code Napoleon, art. 1384. The exception there is that "the responsibility above mentioned is incurred unless the father and mother, tutors and artisans, can prove that they were not able to prevent the act which gives rise to such responsibility." Nothing is directly said about a "good father of a family;" but the exception in

the Code Napoleon is applicable only to a father or other superior who might be said to be in loco parentis, that is to say, in the French version, "père et mère instituteurs et artisans," and the provision as to instituteurs and artisans applies to the time when the tort-feasors are "sous leur surveillance." The phrase, "good father of a family," is thoroughly French; it goes back to provisions as to the feudal seigneur in the Coutume de Paris, which was almost a common law for France. (Art I.)

7. The answer fairly sets up the defense of independent contractor; for it says Ortiz was acting under the direction of the boss stevedore or contractor of stevedores, whose emplyee he was. This means Hernandez was an independent contractor, or it should have been struck out. The doctrine of independent contractor must be held to apply in Porto Rico, because it is merely saying that the defendant did not commit. the act, for it was committed by a person who to that extent was independent. This is essentially the civil-law rule; for the old Roman law looked to the person doing the act as responsible for it, whether contractual or delictal. Making the doctrine of independent contractor apply is therefore in strict consonance with the Porto Rican Code, §§ 1803, 1804, as well as the general principles of the civil law. On the other hand, there seems to be as little reason to exclude from the Porto Rican law the adoption of what is known as vice-principal rule, that is to say, the principle that a man who has such control of the work that he stands in the shoes of the head of the business or of the corporation sued makes the principal liable for acts in the course of the business. It is true the complaint does not use the expression "vice principal" any more than the answer uses the expression "independent contractor," but the court will con-

Ortiz v. Bull Insular Line.

strue both pleadings as meaning what they say in effect although the technical words are not used. It is difficult sometimes to draw the line between an independent contractor and a vice principal; but it is a difficulty arising from the facts, and not from the law. Where a defendant contracts with a man to do a certain work, especially where this man is to employ and pay his own laborers, it is the case of an independent contractor for whom the principal is not liable except as to care in selection and supervision in the execution of the work. But when the defendant does the work himself through an inferior official or supervisor, such inferior, superintending a specific part of the work, takes the place of the principal and binds him. In the case at bar the jury could have found for the defendant on the theory either of independent contractor of proper selection and supervision of employees, according as they believed this or that part of the evidence. Both defenses were fairly in the case.

Upon the whole, it does not appear that there has been any error of the court or jury in connection with the conclusion reached. The motion for a new trial is therefore denied.

It is so ordered.